**Opinion filed March 21, 2024**



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00339-CR

_____

## FREDERICK LORENZO BROOKS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 104th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 23185-B**

## M E M O R A N D U M   O P I N I O N

Appellant, Frederick Lorenzo Brooks, was indicted for two offenses: (1) tampering with physical evidence (a third-degree felony); and (2) possession of methamphetamine in an amount by aggregate weight of less than one gram (a state jail felony). *See* TEX. PENAL CODE ANN. § 37.09(a)(1), (c) (West Supp. 2023); TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (b) (West Supp. 2023).

Before trial, Appellant filed a motion for continuance and a motion to suppress evidence. The trial court denied Appellant's motion for continuance prior to the commencement of trial. During trial, Appellant's trial counsel presented Appellant's motion to suppress evidence, which the trial court also denied. The jury found Appellant guilty of both offenses. Upon Appellant's plea of "true" to the two enhancement allegations in both offenses, the jury found both enhancement allegations to be "true" and assessed Appellant's punishment at twenty-five years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice for the tampering offense, and two years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice for the possession-of-methamphetamine offense. The trial court sentenced him accordingly.

On appeal, Appellant challenges the trial court's denial of his motion for continuance, and the trial court's denial of his motion to suppress evidence. We affirm.

## I. *Factual Background*

On September 5, 2020, Officer Amanda Carlton of the Abilene Police Department[1] was on routine patrol when she observed Appellant riding his bicycle on the wrong side of the roadway. Because she observed this traffic violation, Officer Carlton initiated a traffic stop. At the time, Appellant was holding a "beer can" in his hand. Officer Carlton testified that she first asked Appellant "where he was going" and "where he was coming from." Appellant pointed in the direction that he had been traveling in response to both questions. Officer Carlton testified that Appellant's answer "didn't make sense." Appellant told Officer Carlton that he

---

[1]Prior to trial, Officer Amanda Carlton changed her name to Amanda Peterson. We will refer to her as "Officer Carlton" in this opinion.

had turned around to find a trash can to discard the beer can. Officer Carlton then asked Appellant for a means of identification; Appellant complied.

Around this time, other officers with the Abilene Police Department arrived at the scene. After verifying his identification and running a warrant check, Officer Carlton determined that Appellant had no outstanding warrants and she returned his identification to him. According to Officer Carlton, the initial purpose of Appellant's detention ended once she returned Appellant's identification to him.

Officer Carlson then asked Appellant if he had any illegal substances on his person. Appellant responded that he did not. Officer Carlton subsequently asked Appellant if she could search him, to which Appellant verbally consented. Officer Carlton directed Appellant toward the front of her patrol unit as she prepared to initiate the search. While Officer Carlton "looked down" to remove a glove from her pocket, Appellant turned and fled. At trial, Officer Jacob Peacock confirmed Appellant's actions at the scene and further testified that he was searching the beer can that Appellant had discarded for contraband before he observed Appellant flee.

As Appellant fled, Officer Carlton identified herself as a police officer and ordered Appellant to stop, but Appellant continued to flee from the officers, prompting them to pursue him on foot. Shortly thereafter, the officers apprehended Appellant in a nearby creek and restrained him with handcuffs. Officer Peacock searched Appellant's person and found a "baggie" hidden under Appellant's tongue, which Officer Peacock suspected was contraband. After a brief struggle, Appellant eventually "spit out" the baggie onto the ground where it was recovered by Officer Peacock. The contents of the baggie were later sent to a lab for testing and analysis; the results of those tests confirmed that the recovered substance was methamphetamine with an aggregate weight of 0.3 grams.

3

Appellant was indicted for tampering with physical evidence and for possession of methamphetamine. Appellant filed a motion for continuance on November 11, the Friday before trial, which commenced on the following Monday. His motion was not presented to the trial court for determination until the day of trial; the motion alleged that Appellant's trial counsel was not prepared for trial due to the lack of communication between Appellant and his counsel. The trial court denied Appellant's motion for continuance and adjourned until approximately 1:30 p.m. that same day.

Appellant filed his motion to suppress evidence with the trial court during this recess. Despite this, the parties consented to the trial court considering Appellant's motion to suppress after all of the evidence had been presented at trial. The trial court held a suppression hearing following the conclusion of the State's case-in-chief and denied Appellant's motion. The jury subsequently found Appellant guilty of both offenses. This appeal followed.

## II. *Standards of Review*

We review a trial court's ruling on a motion for continuance for an abuse of discretion. *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007) (citing *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996)). The trial court has broad discretion in ruling on a motion for continuance. *See Gonzales v. State*, 304 S.W.3d 838, 843–44 (Tex. Crim. App. 2010); *Gallo*, 239 S.W.3d at 764; *see also* TEX. CODE CRIM. PROC. ANN. arts. 29.06(6), 29.07 (West 2006). A defendant must show "specific prejudice to his defense" to establish an abuse of that discretion. *See Renteria v. State*, 206 S.W.3d 689, 699 (Tex. Crim. App. 2006) (citing *Heiselbetz v. State*, 906 S.W.2d 500, 511–12 (Tex. Crim. App. 1995)). In reviewing the trial court's ruling, we bear in mind the general interest in the fair and efficient

4

administration of justice. *Rosales v. State*, 841 S.W.2d 368, 375 (Tex. Crim. App. 1992). We also look to the particular facts of the case and consider the "circumstances present in every case, particularly the reasons presented to the trial [court] at the time the request is denied." *Id.* 374–75 (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)).

We also review a trial court's ruling on a motion to suppress for an abuse of discretion, and we apply a bifurcated standard of review. *Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016); *Martinez v. State*, 348 S.W.3d 919, 922–23 (Tex. Crim. App. 2011). We give almost total deference to the trial court's determination of the historical facts that the record supports, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Derichsweiler v. State*, 348 S.W.3d 906, 913 (Tex. Crim. App. 2011); *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We also defer to the trial court's findings as to questions of fact and mixed questions of law and fact that turn on the weight or credibility of the evidence. *Brodnex*, 485 S.W.3d at 436; *Wade v. State*, 422 S.W.3d 661, 666–67 (Tex. Crim. App. 2013); *Derichsweiler*, 348 S.W.3d at 913.

We review de novo the trial court's determination of pure questions of law, the application of the law to established facts, and the legal significance of those facts. *Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018); *Wade*, 422 S.W.3d at 667; *Derichsweiler*, 348 S.W.3d at 913; *Kothe v. State*, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004) (citing *United States v. Sharpe*, 470 U.S. 675, 682 (1985)). We also review de novo mixed questions of law and fact that are not dependent upon credibility determinations. *Brodnex*, 485 S.W.3d at 436; *Derichsweiler*, 348 S.W.3d at 913 (citing *Amador*, 221 S.W.3d at 673).

If the record is silent as to the reasons for the trial court's ruling, as in the case before us, we review the evidence in the light most favorable to the trial court's ruling, infer the necessary fact findings that support the trial court's ruling if the evidence supports those findings, and assume that the trial court made implicit findings in support of its ruling. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007); *Carmouche v. State*, 10 S.W.3d 323, 327–28 (Tex. Crim. App. 2000).

When considering a motion to suppress, the trial court is the exclusive trier of fact and judge of witness credibility. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). As such, the trial court may choose to believe or to disbelieve all or any part of a witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *Johnson v. State*, 803 S.W.2d 272, 287 (Tex. Crim. App. 1990). Therefore, we will sustain the trial court's ruling on a motion to suppress, regardless of whether the trial court granted or denied the motion, if it is supported by the record and if it is correct under any applicable theory of law. *Lerma*, 543 S.W.3d at 190; *Ross*, 32 S.W.3d at 855–56.

III. *Analysis*

Appellant raises two issues on appeal. Appellant contends that: (1) the trial court abused its discretion when it denied his motion for continuance; and (2) the trial court abused its discretion when it denied his motion to suppress evidence.

A. *Motion for Continuance*

In his first issue, Appellant argues that the trial court abused its discretion when it denied his motion for continuance. Specifically, Appellant contends that he was prejudiced by the trial court's denial of his motion because, prior to trial, he was unable to confer with his trial counsel to discuss (1) whether or not he should testify;

(2) his punishment election decision; (3) potential witnesses; (4) their general trial strategy; and (5) potential trial issues to assist in jury selection.

The trial of a criminal action may be continued upon the filing and presentment of a written motion by the State or the defendant, and upon a showing of sufficient cause. *See* CRIM. PROC. art. 29.03. The grant or denial of a motion for continuance is within the sound discretion of the trial court, and a defendant is not entitled to the grant of a continuance as a matter of right. *See id.* art. 29.06(6); *Heiselbetz*, 906 S.W.2d at 511. Instead, a defendant must satisfy a two-prong test to show that the trial court committed reversible error by denying his pretrial motion for continuance. *See Gonzales*, 304 S.W.3d at 843.

First, Appellant must show that "the case made for delay was so convincing that no reasonable trial judge could conclude that scheduling and other considerations as well as fairness to the State outweighed the defendant's interest in [the] delay of the trial." *Id.* (quoting George E. Dix & Robert O. Dawson, 42 *Texas Practice Series: Criminal Practice & Procedure* § 28.56 (2d ed. 2001)). Second, Appellant must demonstrate that he was actually prejudiced by the trial court's ruling—Appellant must show "with considerable specificity how [he] was harmed by the absence of more preparation time than he actually had." *Gonzales*, 304 S.W.3d at 842–43; *Janecka*, 937 S.W.2d at 468; *Heiselbetz*, 906 S.W.2d at 511–12. A defendant who files a motion for continuance based on the claimed need for additional trial preparation time must show diligence as a precondition to the motion. *Walter v. State*, 581 S.W.3d 957, 984 (Tex. App.—Eastland 2019, pet. ref'd) (citing *Gonzales*, 304 S.W.3d at 843). "A request for delay to permit further investigation or other preparation for trial is based on nonstatutory and therefore equitable

grounds. [Granting or denying the request] is particularly within the discretion of the trial court." *Id.* (quoting *Gonzales*, 304 S.W.3d at 844 n.11).[2]

Appellant filed a motion for continuance based on his failure to appear at the October 28 setting and his trial counsel's inability to contact him. In the motion, Appellant's trial counsel asserted that he had attempted to contact and communicate with Appellant prior to trial but was unable to do so, and as a result "[c]ounsel [could not] adequately prepare for trial without [the] communication and the cooperation of [Appellant]." When the motion was presented to the trial court, Appellant's trial counsel informed the trial court that he did not notify Appellant of the final plea hearing date (October 28). As a consequence, the trial court issued a warrant for Appellant's arrest because of his failure to appear at the plea hearing, which resulted in Appellant's arrest before trial. The trial court questioned Appellant's trial counsel regarding his contact with Appellant about the final plea hearing date, to which Appellant's trial counsel stated that he "did not send anything to [Appellant]," and that he only spoke with Appellant's mother, not to Appellant directly. Ultimately, Appellant's trial counsel argued that the trial court should grant a "short" continuance because he and Appellant were not able to properly prepare for trial, and he and Appellant were now "having some discussions . . . about things that [they] needed to be discussing to prepare for trial."

The evidence before the trial court at the hearing on the motion does not show, as it should, Appellant's diligence in preparing for trial prior to the trial setting. On

---

[2]Ordinarily, a defendant can make such a showing only at a hearing on a motion for new trial because only then will he be able to produce evidence regarding what additional information, evidence, or witnesses would have been available to him if the trial court had granted the motion. *Gonzales*, 304 S.W.3d at 842–43; *Nwosoucha v. State*, 325 S.W.3d 816, 825–26 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). In this case, we note that Appellant did not file either a motion for new trial or other post-trial motion to explain or assert how he was prejudiced by the trial court's denial of the motion for continuance.

July 22, the trial court sent notice of the November 14 jury trial setting to counsel for the parties. On October 6, the trial court again sent notice of the November 14 jury trial setting, which included the October 28 plea deadline date, to the parties' trial counsel. Appellant's trial counsel did not file the motion for continuance until November 11, the Friday before trial. When the motion was presented to the trial court on the day of trial, Appellant's trial counsel focused on the reasons underlying Appellant's failure to appear at the plea deadline date. After this, Appellant's trial counsel requested that the trial court grant the motion because he and Appellant "[had] not been able to properly prepare for trial," but he neglected to discuss his efforts to prepare for trial or correspond with Appellant. Indeed, Appellant's trial counsel stated that Appellant left "at least two voice mails in my office," but he did not specifically indicate his efforts to reach out to Appellant in order to prepare for trial—aside from stating that his assistant called back "and got what I believe to be his mother on the phone"— prior to the scheduled trial date or the plea deadline date. Similarly, in the motion, Appellant's trial counsel noted that Appellant missed the plea deadline date and, generally, that he had "attempted to communicate with [Appellant] but has been unable to contact him."

The trial court in its ruling may have considered potential scheduling conflicts and general fairness to the State when it denied Appellant's motion for continuance. *See Gonzales*, 304 S.W.3d at 842; *see also Nwosoucha v. State*, 325 S.W.3d 816, 828 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (holding that a reasonable trial court could have concluded that witness scheduling, fairness to the State, and other considerations outweighed an appellant's interest in delaying the trial). As we have said, the trial court sent two notices to counsel for the parties, on July 22 and October 6, regarding the November 14 jury trial setting and Appellant's trial counsel

9

did not file the motion for continuance until November 11, the Friday before. Here, Appellant's trial counsel had several months to converse with Appellant and prepare for trial prior to Appellant's failure to appear at the October 28 plea deadline date and his subsequent arrest.

Moreover, Appellant failed to demonstrate how he was actually prejudiced as a result of the trial court's denial of his motion—the second *Gonzales* prong— because Appellant did not identify or articulate any reasons as to how he was harmed by the denial of additional time to prepare for trial. *Gonzales*, 304 S.W.3d at 843. In this case, Appellant did not present any testimony or other evidence to demonstrate with specificity how he was prejudiced because he and his trial counsel were not afforded additional time to prepare for trial, such as by showing (1) which witnesses he would have presented at trial, (2) why the witnesses could not be present during trial, (3) the substance of the witnesses proposed testimony, (4) how he was harmed by the lack of this unspecified testimony, (5) whether Appellant would have changed his trial strategy, or (6) whether this consequence affected his punishment election decision or desire to testify or not testify at trial. *See Gonzales*, 304 S.W.3d at 842–43.

Texas courts have routinely held that a defendant's bare assertion that he did not have adequate time to prepare for trial or the mere speculation of potential prejudice, such as the argument advanced by Appellant at the pretrial hearing, is insufficient to show harm. *Renteria*, 206 S.W.3d at 702 (holding that an appellant's bare assertion that he did not have enough time to interview potential witnesses or prepare for trial alone does not establish prejudice); *see also Janecka*, 937 S.W.2d at 468 (holding that trial counsel's "[mere desire for] more time to prepare does not alone establish an abuse of discretion"); *Heiselbetz*, 906 S.W.2d at 511–12 (holding

10

that the trial court did not abuse its discretion in denying a motion for continuance where the appellant failed to allege any specific prejudice that showed he was surprised at trial, unable to effectively cross-examine witnesses, or suffered harm from inadequate time to interview the State's potential witnesses).

Appellant does not cite to any case law, evidence, or other authority to support his claim of actual prejudice or harm. Thus, in the absence of a showing of harm or prejudice, we conclude that the trial court did not abuse its discretion when it denied Appellant's motion for continuance.[3] *See Janecka*, 937 S.W.2d at 468; *Heiselbetz*, 906 S.W.2d at 511–12; *see also Grubb v. State*, No. 11-20-00037-CR, 2022 WL 320915, at *5 (Tex. App.—Eastland Feb. 3, 2022, pet. ref'd) (mem. op., not designated for publication) (the trial court did not abuse its discretion in denying the defendant's motion for continuance based on the defendant's request for additional time to prepare for trial; the defendant also failed to show the necessary diligence); *Walter*, 581 S.W.3d at 983–84 (same); *Garcia v. State*, No. 11-16-00187-CR, 2018 WL 3384574, at *2 (Tex. App.—Eastland July 12, 2018, no pet.) (mem. op., not designated for publication) (same); *Thompson v. State*, No. 11-15-00221-CR, 2016 WL 4385436, at *2 (Tex. App.—Eastland Aug. 11, 2016, no pet.) (mem. op., not designated for publication) (no abuse of discretion was shown by the trial court's denial of the defendant's motion for continuance so his counsel could secure the attendance of a witness; the motion for continuance was filed on the day that trial was to commence and no evidence or explanation was presented of the defendant's

---

[3]While the trial court denied Appellant's motion for continuance, we note that the trial court delayed the commencement of trial for approximately four hours, which allowed Appellant's trial counsel to meet with Appellant and discuss the areas of concern that he has raised on appeal. During this break, Appellant's trial counsel also filed with the trial court Appellant's written election for the jury, in the event he was convicted, to assess his punishment.

diligence or efforts to secure the witness's attendance at trial, how soon the witness could be available to testify, or the materiality of the witness's testimony).

In this instance, the trial court did not abuse its discretion when it denied Appellant's motion for continuance, and Appellant did not demonstrate that he was harmed or prejudiced by the trial court's ruling. Accordingly, we overrule Appellant's first issue.

B. *Motion to Suppress Evidence*

In his second issue, Appellant argues that the trial court abused its discretion when it denied Appellant's motion to suppress evidence because the officers' testimony lacked "facts" to support a reasonable suspicion of criminal activity following Appellant's flight from police.

The Fourth Amendment to the United States Constitution guarantees protection to persons from unreasonable searches and seizures by government officials. U.S. CONST. amend. IV; *see Hubert v. State*, 312 S.W.3d 554, 560 (Tex. Crim. App. 2010); *Wiede*, 214 S.W.3d at 24. There are three distinct types of police–citizen interactions: "(1) consensual encounters that do not implicate the Fourth Amendment; (2) investigative detentions that are Fourth Amendment seizures of limited scope and duration that must be supported by a reasonable suspicion of criminal activity; and (3) arrests, the most intrusive of Fourth Amendment seizures, that are only reasonable if supported by probable cause." *Wade*, 422 S.W.3d at 667; *see State v. Woodard*, 341 S.W.3d 404, 410–11 (Tex. Crim. App. 2011) (citing *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *Gerstein v. Pugh*, 420 U.S. 103, 111–12 (1975); *Terry v. Ohio*, 392 U.S. 1, 30–31 (1968)).

The temporary, warrantless detention of an individual by law enforcement personnel constitutes a seizure within the meaning of the Fourth Amendment and

must be reasonable. *Derichsweiler*, 348 S.W.3d at 914. To justify the detention, a law enforcement officer's actions must be supported by reasonable suspicion. *Id.*

Reasonable suspicion for a detention exists if a law enforcement officer has specific, articulable facts, in light of his experience and personal knowledge, combined with rational inferences from those facts, that would lead the officer to reasonably conclude that the person detained has engaged in, is presently engaging in, or soon will engage in criminal activity. *Derichsweiler*, 348 S.W.3d at 914 (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *Crain v. State*, 315 S.W.3d 43, 52–53 (Tex. Crim. App. 2010); *see Terry*, 392 U.S. at 21–22. This is an objective standard that disregards the actual subjective intent of the detaining officer and focuses, instead, on whether there was an objectively justifiable basis for the detention. *Terry*, 392 U.S. at 21–22; *York v. State*, 342 S.W.3d 528, 536 (Tex. Crim. App. 2011); *Derichsweiler*, 348 S.W.3d at 914.

When we evaluate whether reasonable suspicion exists, we consider the totality of the circumstances from an objective standpoint and whether the totality of the objective information available to the detaining officer indicates that the officer had a particularized and objective basis to suspect wrongdoing. *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 36 (Tex. Crim. App. 2017); *Derichsweiler*, 348 S.W.3d at 914–16 (citing *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)); *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). This consideration includes "both the content of information possessed by police and its degree of reliability." *Alabama v. White*, 496 U.S. 325, 330 (1990).

We may not use a "divide and conquer" approach, in which we disregard some individual circumstances as not being suspicious; instead, we must consider the cumulative force of all the circumstances. *Furr v. State*, 499 S.W.3d 872, 880 n.8

(Tex. Crim. App. 2016) (citing *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015)). As such, whether the facts known to the officer rise to the level of reasonable suspicion is a mixed question of law and fact that we review de novo. *State v. Mendoza*, 365 S.W.3d 666, 669–70 (Tex. Crim. App. 2012).

An officer need not develop a suspicion that a particular crime has been or will be committed; rather, he need only suspect that something "of an apparently criminal nature is brewing." *Derichsweiler*, 348 S.W.3d at 916–17 (citing *White*, 496 U.S. at 330). In other words, it is sufficient if the officer's action is supported by reasonable suspicion to believe that criminal activity "may be afoot." *Ramirez-Tamayo*, 537 S.W.3d at 36 (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)); *see Terry*, 392 U.S. at 30. This requires that the information available to the officer supports more than a mere hunch or intuition. *Ramirez-Tamayo*, 537 S.W.3d at 36; *Wade*, 422 S.W.3d at 668. The officer may then pursue multiple plausible theories in an attempt to resolve his suspicion. *United States v. Pack*, 612 F.3d 341, 355 (5th Cir. 2010) (citing *United States v. Brigham*, 382 F.3d 500, 509 (5th Cir. 2004)). Therefore, even when circumstances seem innocent in isolation, an investigative detention is justified if the circumstances combine to reasonably suggest that criminal conduct is afoot or imminent. *See Furr*, 499 S.W.3d at 880 n.8; *Murray*, 457 S.W.3d at 448; *see also Derichsweiler*, 348 S.W.3d at 917. Further, we may consider an officer's ability to "draw on his own experience and specialized training to make inferences from and deductions about the cumulative information available to him that might well elude an untrained person." *Ramirez-Tamayo*, 537 S.W.3d at 36 (citing *Arvizu*, 534 U.S. at 273).

Appellant first argues, and the State concedes, that his initial detention for the traffic violation ended when Officer Carlton returned his identification to him and

then asked Appellant if he would consent to a search of his person. Consequently, Appellant's principal argument is that the trial court erred when it denied his motion to suppress because (1) the "continued encounter was consensual" and (2) that "[n]o officer testified that any new or additional facts existed [to justify] a new or additional detention." Additionally, Appellant broadly asserts that "[f]leeing, without more, as no officer testified here, is not reasonable suspicion to justify [Appellant's] ensuing arrest and subsequent search."

At the outset, we note that Appellant does not cite to any caselaw or other authority to support these arguments. Appellant asserts that the portion of his encounter with the officers that he contends was consensual forecloses the officers from developing reasonable suspicion; this assertion is unfounded. In that regard, the Court of Criminal Appeals has held that a law enforcement officer may engage in a consensual encounter for the purpose of developing reasonable suspicion. *See Chiarini v. State*, 442 S.W.3d 318, 324 (Tex. Crim. App. 2014) (citing *Wade*, 422 S.W.3d at 667 & n.17). Appellant is also incorrect in his assertion that "new" facts must have existed to justify the officers' reasonable suspicion determination for the subsequent detention of Appellant after he fled and was apprehended. As we previously stated, the Court of Criminal Appeals has cautioned against using a divide-and-conquer approach by viewing the relevant events in insolation. *Furr*, 499 S.W.3d at 880 n.8. Instead, we are to consider the cumulative force of all of the circumstances. *Id.* (citing *Murray*, 457 S.W.3d at 448). As such, the officers' testimony regarding Appellant's statements and behavior before, during, and after the initial traffic stop and detention are relevant to our evaluation of whether the facts and circumstances support the officers' reasonable suspicion determination.

The State argues that the officers' reasonable suspicion determination is supported by multiple factors. We agree. In this case, the officers testified to several articulable facts which, when considered cumulatively, establish reasonable suspicion for the officers to detain and investigate Appellant for suspected criminal activity. These facts, although not exhaustive, include that: (1) Officer Carlson testified that Appellant's explanation of what he was doing in the area "didn't make sense;" (2) Appellant nonverbally "revoked" his consent to the officer's request to search his person by fleeing without warning or provocation; (3) Appellant's unprovoked flight was presupposed by Officer Carlson's questions regarding his possible possession of contraband and prior to the search of his person for contraband; (4) Appellant abandoned his property—a bicycle—when he fled to a nearby creek; and (5) Appellant continued to evade the officers after Officer Carlton identified herself as a police officer and ordered Appellant to stop.

While a citizen's refusal to consent to a search cannot be the "prominent factor" in a reasonable suspicion determination, it can be a factor when combined with additional, suspicious factors. *Wade*, 422 S.W.3d at 674–75; *see also Matthews v. State*, 431 S.W.3d 596, 605 n.33 (Tex. Crim. App. 2014). Here, Appellant's refusal to consent to a search of his person was only one of several factors identified in the officers' testimony that support their reasonable suspicion determination. Other factors, such as Appellant's flight, Appellant's subsequent evasion from the officers, and an officer's belief that a version of events is "implausible" are also relevant in determining whether reasonable suspicion exists. *See State v. Kerwick*, 393 S.W.3d 270, 276 (Tex. Crim. App. 2013) ("[Flight] . . . may be considered among the totality of the circumstances in a reasonable-suspicion analysis.") (citation omitted); *see also Haas v. State*, 172 S.W.3d 42, 54 (Tex.

16

App.—Waco 2005, pet. ref'd) (holding that an officer's disbelief of the appellant's explanation is a factor in determining reasonable suspicion); *Martinez v. State*, 72 S.W.3d 76, 83 (Tex. App.—Amarillo 2002, no pet.) (holding that evasive behavior is a factor that is relevant to determining reasonable suspicion). Further, law enforcement officers are entitled to interpret the facts and evidence by using their commonsense judgments, as well as their training and experience, to infer whether Appellant was engaged in, had engaged in, or was engaging in, criminal activity. *See Kerwick*, 393 S.W.3d at 276 (citing *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000)); *see also Arvizu*, 534 U.S. at 273.

Here, several factors that support a reasonable suspicion determination were in play. Appellant's consent to search his person was a minimal factor at best, not a prominent factor; on the other hand, Appellant's unprovoked flight for no apparent reason was a prominent factor. *See Kerwick*, 393 S.W.3d at 276 ("'[Flight] is not necessarily indicative of wrongdoing, but it is certainly suggestive of such' and may be considered among the totality of the circumstances in a reasonable-suspicion analysis. The Fourth Amendment does not require an officer 'to simply shrug his shoulders and allow . . . a criminal to escape.'"); *Matthews*, 431 S.W.3d at 606 n.37 (same).

Based on the officers' specific, articulated facts discussed above, and the relevant factors and circumstances in this case when considered cumulatively, Officer Carlson and Officer Peacock, in relying on their experience, could have reasonably suspected that other criminal activity, independent of Appellant's observed traffic violation, had occurred or was afoot. Therefore, we conclude that the trial court did not abuse its discretion when it denied Appellant's motion to suppress evidence because a sufficient and justifiable basis for reasonable suspicion

existed for the officers to detain and investigate Appellant for criminal activity. Accordingly, we overrule Appellant's second issue.

## IV. *This Court's Ruling*

We affirm the judgment of the trial court.


W. STACY TROTTER

JUSTICE


March 21, 2024

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.